Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| PAC GENERAL, LLC<br><br>Peticionario<br><br>v.<br><br>MOISÉS BERRIOS ORTÍZ, COMPAÑÍA DE SEGUROS ABC, INC., SUTANA Y FULANO DE TAL<br><br>Recurrido | TA2026CE00269 | *Certiorari*<br>Procedente del Tribunal de Primera Instancia, Sala de Superior de Bayamón<br><br>Caso Núm.: BY2024CV06787<br><br>Sobre: Sentencia Declaratoria; Daños Por Incumplimiento de Contrato; Cumplimiento Específico del Contrato |

Panel integrado por su presidenta la Jueza Grana Martínez, el Juez Ronda Del Toro, la Jueza Lotti Rodríguez.

*Grana Martínez, jueza ponente*

## RESOLUCIÓN

En San Juan, Puerto Rico, a 21 de mayo de 2026.

Comparece PAC General, LLC (en adelante, PAC o peticionario) mediante recurso de *certiorari* presentado el 5 de marzo de 2026, nos solicita que dejemos sin efecto la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI o foro primario) el 2 de febrero de 2026, notificada el 4 de febrero de 2026. A través de dicho dictamen, el TPI denegó la *Moción de Sentencia Sumaria* presentada por PAC. Los hechos pertinentes a la determinación que hoy tomamos se incluyen a continuación.

## I.

El 12 de noviembre de 2024, PAC presentó una *Demanda* en contra del señor Moisés Berríos Ortiz (en adelante, señor Berríos o recurrido).[1] En síntesis, PAC alegó que el 3 de abril de 2024 las partes suscribieron un Contrato de Arrendamiento mediante el cual el señor Berríos cedió en arrendamiento a PAC un espacio en las

---

[1] Entrada #1 del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI).

fincas números 61,239 y 61,240 ubicadas en el Barrio Minillas de Bayamón, con el propósito de desarrollar, construir, instalar, operar y mantener facilidades de telecomunicaciones. Además, adujo que, el propósito del arrendamiento surgía de forma clara y conspicua del Contrato de Arrendamiento. También, sostuvo que, conforme a los términos del contrato, el arrendamiento tendría un término inicial de cinco (5) años, renovable automáticamente, y que el recurrido tenía la obligación de cooperar y permitir el acceso a la propiedad para la realización de estudios, obtención de permisos y desarrollo del proyecto.

Asimismo, PAC alegó que, inició los trámites necesarios para el desarrollo del proyecto, incluyendo la radicación de solicitudes de permisos ante la Oficina de Gerencia de Permisos, pero que el señor Berríos incumplió con sus obligaciones contractuales al impedir el acceso a la propiedad y obstaculizar el desarrollo del proyecto, lo que le ocasionó daños. Ante la negativa del recurrido de permitir acceso a la propiedad arrendada para continuar con el proyecto, PAC recurrió al TPI y solicitó como uno de los remedios peticionados, que se le ordenara al señor Berríos el cumplimiento específico del contrato.

En respuesta, el 22 de enero de 2025, el señor Berríos presentó su *Contestación a la Demanda*.[2] Allí admitió haber suscrito el Contrato de Arrendamiento, pero levantó diversas defensas afirmativas dirigidas a impugnar la validez y exigibilidad del contrato.[3] Aceptó que la partes suscribieron un contrato el día 3 de abril titulado Contrato de Arrendamiento, pero adujo que el mismo adolecía de vicios en el consentimiento, causa y objeto por el cual no había quedado perfeccionado. Afirmó que, además, la intención era crear un derecho de superficie que tampoco se concretizó.

---

[2] Entrada #7 del SUMAC TPI.
[3] Íd.

Expuso también que PAC no especificó la altura de la torre, limitándose a indicar que sería "bajita"; no especificó qué tipo de cablería, voltaje, tipos de radiaciones que se emitirían y que se recibirían en y desde la propiedad, qué instalaciones ubicaría en el techo de la propiedad, ni las servidumbres que gravarían su propiedad, entre otras.

Así las cosas, el 30 de enero de 2025, PAC presentó una *Moción en Solicitud de Sentencia Sumaria*.[4] A través de la misma, le solicitó al TPI que declarara la validez y exigibilidad del contrato y ordenara su cumplimiento específico, toda vez que no existía controversia genuina sobre los hechos materiales del caso.

En oposición, el 7 de febrero de 2025, el señor Berríos presentó una *Moción al Amparo de la Regla 36 de Procedimiento Civil*, en la cual solicitó que se pospusiera la consideración de la solicitud de sentencia sumaria hasta tanto pudiera completar el descubrimiento de prueba necesario, para fundamentar su oposición.[5] Ese mismo día, el foro primario dictó una *Orden* mediante la cual declaró "Ha Lugar" la moción presentada por el recurrido.[6] También ordenó a las partes presentar un itinerario de descubrimiento de prueba. Inconforme con dicha determinación, el 13 de febrero de 2025, PAC presentó una *Moción de Reconsideración*.[7] El señor Berríos replicó la misma el 27 de febrero de 2025, y mediante *Resolución* emitida el 7 de marzo de 2025, el TPI declaró "No ha Lugar" la *Moción de Reconsideración* presentada por PAC.[8]

Así las cosas, el peticionario presentó una *Moción en Solicitud de Orden*, a través de la cual solicitó que se diera por sometida la

---

[4] Entrada #9 de SUMAC TPI.
[5] Entrada #11 de SUMAC TPI.
[6] Entrada #12 de SUMAC TPI.
[7] Entrada #13 de SUMAC TPI.
[8] Entrada #15 y 16 de SUMAC TPI.

*Moción de Sentencia Sumaria,* con el pretexto de que todavía para el 25 de marzo de 2025, el recurrido no había realizado gestión alguna conducente al mismo.[9] El 25 de marzo de 2025, el TPI ordenó al recurrido a mostrar causa ante su incumplimiento.[10] Ante ello, el 26 de marzo de 2025, el señor Berríos presentó una *Moción en Cumplimiento de Orden* y, en esa misma fecha, el foro primario ordenó a las partes a informar el calendario para deposiciones.[11] El 12 de mayo de 2025 las partes presentaron escrito conjunto en cumplimiento con lo ordenado.[12]

Luego de varios trámites procesales, el foro primario ordenó a PAC presentar una nueva solicitud de sentencia sumaria en un solo escrito con la evidencia documental correspondiente.[13] En cumplimiento con lo ordenado, PAC presentó su *Solicitud de Sentencia Sumaria* en la cual reiteró que el contrato suscrito entre las partes era válido, exigible y que el recurrido había incumplido claramente con sus obligaciones contractuales.[14] Por su parte, el recurrido presentó su *Oposición a Solicitud de Sentencia Sumaria.*[15]

Mediante *Resolución* del 2 de febrero de 2026, notificada el 4 de febrero de 2026, el TPI declaró "No Ha Lugar" la *Solicitud de Sentencia Sumaria* presentada por PAC.[16] En su *Resolución,* concluyó que subsistían dos controversias de hechos materiales que, a su juicio, impedían la adjudicación sumaria del caso. Específicamente, determinó que existía controversia sobre: **(1) si el consentimiento otorgado por el Sr. Berríos al momento de suscribir el contrato estuvo viciado por dolo grave o incidental; y (2) si PAC informó adecuadamente las dimensiones, peso,**

---

[9] Entrada #17 de SUMAC TPI.
[10] Entrada #18 de SUMAC TPI.
[11] Entrada #19 y 20 de SUMAC TPI.
[12] Entrada #21 de SUMAC TPI.
[13] Entrada #36 de SUMAC TPI.
[14] Entrada #37 de SUMAC TPI.
[15] Entrada #45 de SUMAC TPI.
[16] Entrada #47 de SUMAC TPI.

**carga estructural, cablería, voltaje, ruido, vibración, radiaciones y demás especificaciones técnicas de los equipos que serían instalados en los predios arrendados.**[17]

Ahora bien, el foro primario dispuso que los siguientes hechos no estaban en controversia:

1. PAC General, LLC es una compañía de responsabilidad limitada organizada bajo las leyes del Estado Libre Asociado de Puerto Rico.

2. El Sr. Berríos es mayor de edad, soltero y titular de la propiedad objeto del contrato de arrendamiento.

3. El 3 de abril de 2024, el Sr. Berríos y PAC suscribieron un contrato titulado "Contrato de Arrendamiento".

4. El propósito del contrato de arrendamiento era la construcción, instalación, operación y mantenimiento de facilidades de telecomunicaciones.

5. El Contrato de Arrendamiento no incluyó una descripción detallada del tamaño de las facilidades de telecomunicaciones que se construirían sobre el techo de la propiedad del demandado.

6. El término inicial pactado para el contrato de arrendamiento fue de cinco (5) años.

7. Según la Sección 4(a)(iii) del Contrato, el término inicial se renovaría automáticamente por siete (7) términos adicionales de cinco (5) años cada uno, a menos que el Sr. Berríos notificara por escrito a PAC General con al menos noventa (90) días de antelación a la expiración del término inicial o del término de renovación, según corresponda.

8. El pago de renta inicialmente propuesto por PAC al Sr. Berríos fue de ochocientos cincuenta dólares ($850.00) mensuales.

9. El Sr. Berríos no estuvo de acuerdo con la renta mensual propuesta y negoció un aumento del canon de arrendamiento.

10. El Sr. Berríos recibió de la Sra. Coletti el borrador del contrato el 14 de marzo de 2024, es decir, más de dos semanas antes de la firma del Contrato de Arrendamiento el 3 de abril de 2024.

11. El canon de arrendamiento finalmente acordado fue de mil dólares ($1,000.00) mensuales ("renta bruta") por el primer carrier y doscientos dólares ($200.00) por cada carrier adicional ("renta adicional"), a ser pagados desde la fecha de comienzo de operaciones.

12. Según las Secciones 15 y 19 del Contrato de Arrendamiento, el Sr. Berríos tiene la obligación de permitir el acceso a la propiedad arrendada en todo momento.

---

[17] Íd, pág. 5.

13. El 23 de mayo de 2024, fecha de comienzo de operaciones, PAC envió al Sr. Berríos la suma de doscientos noventa dólares con treinta y dos centavos ($290.32) para cubrir la renta correspondiente al periodo del 24 al 31 de mayo de 2024, y mil dólares ($1,000.00) por la renta bruta del mes de junio.

14. PAC remitió al Sr. Berríos, y este recibió y cobró, un cheque por mil dólares ($1,000.00) correspondiente a la renta del mes de julio de 2024.

15. El Sr. Berríos recibió de PAC, mediante depósito directo, la cantidad de mil dólares ($1,000.00) por concepto de la renta correspondiente al mes de agosto de 2024, cantidad que no devolvió.

16. El Sr. Berríos cobró los pagos de renta hasta el mes de agosto de 2024.

17. El Sr. Berríos canceló la cuenta bancaria en la cual PAC realizaba mensualmente los depósitos directos por concepto de los cánones de arrendamiento.

18. PAC ha continuado enviando mensualmente los pagos de renta por concepto de los cánones de arrendamiento al Sr. Berríos.

19. El Sr. Berríos instaló una verja tipo "cyclone fence" para impedir el acceso de PAC General a la propiedad.

20. El 12 de julio de 2024, la Sra. Rosa A. Labiosa Lozada presentó una querella ante la Junta de Planificación alegando que la parte demandante había construido antenas de telecomunicaciones sin los permisos correspondientes. La querella fue presentada "en representación de los Residentes de Camino Los Vázquez".

21. El 23 de junio de 2025, la Junta de Planificación de Puerto Rico emitió una resolución archivando la querella 2024-SRQ-302789, presentada por la Sra. Labiosa Lozada, tras concluir que PAC General ya no se encontraba en incumplimiento con la Regla 1.6.7 del Reglamento Conjunto de Permisos para Obras de Construcción y Usos de Terrenos de 2020.

22. Según la Resolución de la J.P., el 7 de agosto de 2024, un empleado de la Junta de Planificación inspeccionó la propiedad del demandado.

23. Según la Resolución de la J.P., el empleado observó que PAC General había comenzado la construcción de unas estructuras en la propiedad del Sr. Berríos, sin un permiso de construcción aprobado, aunque sí radicado bajo el número 2024-581178-PCOC-306594.

24. El 15 de octubre de 2024, el permiso de construcción número 2024-581178-PCOC-306594 fue aprobado.

25. Mediante el Contrato de Arrendamiento, el demandado le concedió un derecho de tanteo a la parte demandante.[18]

---

[18] Íd, págs. 3-5.

Además, en la referida *Resolución,* el foro primario concluyó que basta con las alegaciones del recurrido para no resolver el caso por la vía sumaria. En específico, el TPI indicó lo siguiente:

> [E]l demandado alegó que el contrato de arrendamiento era de adhesión y le imponía condiciones onerosas y desproporcionadas. Indicó que, a pesar de que negoció el canon de arrendamiento, no tenía conocimiento técnico sobre telecomunicaciones ni el valor del arrendamiento en el mercado. Manifestó que el proceso de negociación y firma del documento se caracterizó por falta de orientación, en particular, en cuanto al efecto y significado de las cláusulas sobre servidumbres, renovación automática y el impacto técnico de la instalación propuesta. Sostuvo que PAC no explicó el peso real, altura, carga estructural, cablería, voltaje, ruido, vibración, radiaciones ni las especificaciones técnicas de ningún equipo. Señaló que tampoco se discutió la posibilidad de que "carriers" o terceros pudieran instalar generadores adicionales o equipos sin autorización del dueño. El Sr. Berríos destacó que PAC le informó que el transformador y los equipos serían pequeños y de poco peso, cuando en realidad la instalación implicaba estructuras y equipos de grandes dimensiones, con cargas significativas, cablería, posibles generadores y un impacto estructural directo sobre el techo de su hogar.[19]

Por tanto, dispuso que, el contrato de arrendamiento no incluye una descripción de las dimensiones ni de las características físicas de las facilidades de telecomunicaciones, por lo cual razonó que existe una controversia material en cuanto a si PAC orientó adecuadamente al señor Berríos. Además, entiende que existe controversia en cuanto a si, de conocer el carácter y extensión de la operación de las facilidades, el señor Berrios hubiese perfeccionado el contrato o si hubiese modificado los términos de este.

Inconforme con el proceder del foro primario, el 5 de marzo de 2026, el peticionario acudió ante este Tribunal mediante recurso de *certiorari* y señala los siguientes errores:

> ERRÓ EL TPI AL DECLARAR NO HA LUGAR LA SOLICITUD DE SENTENCIA SUMARIA PRESENTADA POR PAC, A PESAR DE QUE NO EXISTÍA CONTROVERSIA GENUINA SOBRE LOS HECHOS MATERIALES Y PROCEDÍA SU ADJUDICACIÓN COMO CUESTIÓN DE DERECHO CONFORME A LA REGLA 36 DE PROCEDIMIENTO CIVIL.

> ERRÓ EL TPI AL CONCLUIR QUE EXISTÍA UNA CONTROVERSIA GENUINA DE HECHOS MATERIALES SOBRE LA EXISTENCIA DE DOLO GRAVE O

---

[19] Íd, pág. 9.

INCIDENTAL EN CONTRAVENCIÓN AL ESTÁNDAR SUSTANTIVO DEL DOLO CONTRACTUAL

ERRÓ EL TPI E INCURRIÓ EN ABUSO DE DISCRECIÓN AL IMPONER A PAC UN SUPUESTO DEBER DE EXPLICAR LOS ASPECTOS TÉCNICOS DEL CONTRATO COMO CONDICIÓN PARA SU VALIDEZ, REQUISITO QUE NO EXISTE EN NUESTRO ORDENAMIENTO JURÍDICO.

## II.

### A. Certiorari

El recurso de *certiorari* es un mecanismo procesal de carácter discrecional que faculta a un tribunal de mayor jerarquía a revisar las decisiones emitidas por un tribunal inferior. *BPPR v. SLG Gómez-López*, 213 DPR 314, 336 (2023); *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). "La característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *BPPR v. SLG Gómez-López*, supra, pág. 337; *Rivera et al. v. Arcos Dorados et al.*, supra, pág. 209; *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012). Esta discreción, se ha definido como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *Pueblo v. Rivera Montalvo*, 205 DPR 352, 373 (2020); *Negrón v. Srio de Justicia*, 154 DPR 79, 91 (2001). Sin embargo, la discreción para expedir el recurso no es irrestricta, ni autoriza al tribunal a actuar de una forma u otra en abstracción del resto del Derecho. *Pueblo v. Rivera Montalvo*, supra, pág. 372 (citando a *Negrón v. Srio. De Justicia,* supra; *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016).

Por otra parte, la Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, dispone que el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el foro primario,

solamente será expedido por este Tribunal cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de Procedimiento Civil o de la denegatoria de una moción de carácter dispositivo. Ahora bien, por excepción este foro apelativo podrá revisar órdenes o resoluciones interlocutorias dictadas por el TPI cuando se recurra de: (1) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (2) asuntos relativos a privilegios evidenciarios; (3) anotaciones de rebeldía; (4) casos de relaciones de familia; (5) casos que revistan interés público; (6) o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. En los casos antes mencionados, el foro apelativo no tiene que fundamentar su decisión al denegar la expedición de un recurso de *certiorari.*

Asimismo, con el fin de que podamos ejercer de manera sabia y prudente la facultad discrecional de entender o no en los méritos de los asuntos que nos son planteados mediante el recurso de *certiorari,* la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR ___ (2025), R. 40, nos señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari.* En lo pertinente, la Regla 40 dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Ahora bien, ninguno de los criterios antes citados es determinante por sí solo y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005) (citando a H. Sánchez Martínez, *Derecho Procesal Apelativo*, Hato Rey, Lexis-Nexis de Puerto Rico, 2001, pág. 560). Por lo general, los tribunales revisores no intervienen con el manejo de los casos de los tribunales de instancia, salvo que "se demuestre que este último actuó con prejuicio o parcialidad, que hubo un craso abuso de discreción, o que se equivocó en la interpretación o aplicación de alguna norma procesal o de derecho sustantivo". *Rivera y Otros v. Bco. Popular*, 152 DPR 140, 155 (2000) (citando a *Lluch et al. v. España Service Sta. Et al.,* 117 DPR 729, 745 (1986)). En tal sentido, al optar por no expedir el auto solicitado, no se está emitiendo una determinación sobre los méritos del asunto o cuestión planteada, por lo que ésta puede ser presentada nuevamente a través del correspondiente recurso de apelación. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008).

**III**

Habiendo examinado la totalidad del expediente, así como los alegatos de las partes, determinamos rechazar la petición a expedir el recurso presentado.

**IV**.

Por los fundamentos antes expuestos, se deniega la expedición del auto de *certiorari*.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica su Secretaria.  La Jueza Lotti Rodríguez disiente sin opinión escrita.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones